ABRAHAM M. PIERSON, Appellant, *v.* DAVID D. GREINIMAN et al., Respondents.

Third Department, December 13, 1973.

*Levene, Gouldin & Thompson* (*David Levene* of counsel), for appellant.

*Atlas, Berg & Mendalis* (*Frederick P. Hafetz* of counsel), for David Greiniman, respondent.

*Henry B. Rothblatt* for Herman Treisser, respondent.

HERLIHY, P. J.   This is an appeal from a judgment of the Supreme Court in favor of the defendant, entered December 29, 1972 in Broome County, upon a decision of the court at a Trial Term, without a jury.

The action was brought by the plaintiff to recover against the defendants the sum of $200,000 which had been delivered by the plaintiff to the defendant Greiniman for the purpose of certain investments.  The right to recover the money is premised upon the theory that said moneys were obtained by Greiniman upon false and fraudulent representations.

It appears from the record that the defendant Greiniman was at all times duly qualified pursuant to the religious laws and

customs of Israel for the title or position of Rabbi. Prior to the transactions whereby the plaintiff turned over the sum of $200,000 to Greiniman for investment purposes, the plaintiff had been on occasions solicited by Greiniman for contributions to religious charities represented by Greiniman and it appears that plaintiff had been a steady and willing contributor to such causes.

After a period of such contributions through Greiniman, the plaintiff and Greiniman entered into an understanding whereby plaintiff would turn over sums of money to Greiniman for investment in real property (land) in Israel with the profits to be used for charitable purposes. The plaintiff testified that defendant represented himself to be an expert in buying and selling land in Israel. The undisputed proof shows that plaintiff did turn over the sum of $136,500 to Greiniman between June of 1962 and November of 1963 for investment in land pursuant to their agreement. Greiniman testified that no cash profits were realized from his handling of the $136,500 and that he undertook to handle the investments by oral purchases of land with no deeds or paper writings to evidence the purchases. Although the plaintiff asserted a separate cause of action for the $136,500, subsequent transactions between the plaintiff and Greiniman would appear to merge that claim with the cause of action regarding the total of $200,000.

On or about December 1, 1963 Greiniman approached plaintiff about investing in a proposed cemetery project in Israel. It is not disputed that Greiniman advised the plaintiff that in consideration of his $136,500 land investments plus additional cash of about $63,500 plaintiff could purchase a 20% interest in the cemetery. Plaintiff agreed and did furnish the additional $63,500 for a total of $200,000 to Greiniman to be invested by purchasing the 20% interest for plaintiff. It also appears undisputed that plaintiff intended that all profits he realized were to go to charity. Plaintiff testified that he was led by Greiniman to believe the $200,000 would purchase an ownership in land. He also testified that Greiniman told him that two other individuals were investing $700,000 and Greiniman personally $100,000 for a total of $1,000,000.

The record establishes that the plaintiff relied upon the defendant as to the various representations made by him to induce the plaintiff to give defendant money for charitable and investment purposes. This is illustrated by the allocution in the record as follows:

"Did it strike you as funny that you did not receive any documents for those land transactions?

"I asked him for the documents, and I asked him for what he was doing, and because he is a rabbi, I trusted him, and that is why everything he said, I thought was it, because I trusted him, and he kept saying, 'I am telling you that you are making money. What are you worrying about?'

"And it was on this trust that you kept giving money to him?

"Yes, sir."

After furnishing the $200,000 the plaintiff subsequently made inquiry from other people he knew to be involved in the cemetery project for information regarding this investment and eventually for the return of his $200,000. In response to the plaintiff's demands, Greiniman sent the plaintiff a letter dated January 9, 1965 assuring the plaintiff that his investment was safe and containing an equivocal offer of refund of the $200,000 made dependent upon the sale of plaintiff's interest. Plaintiff was apparently not completely assured and his reliance upon the defendant was shaken and this lawsuit is the result. As of the time of trial, the cemetery project had gone bankrupt and been taken over by new owners.

To sustain the cause of action the plaintiff had to prove "a representation of fact, which is either untrue and known to be untrue or recklessly made, and which is offered to deceive the other party and to induce them to act upon it, causing injury". (*Jo Ann Homes at Bellmore* v. *Dworetz,* 25 N Y 2d 112, 119.)

The trial court found a "complete failure" on the part of the plaintiff to prove that Greiniman "never invested the money in his [plaintiff's] behalf." However, on the present record we find that the plaintiff adduced ample proof of a fraud.

As noted above, the plaintiff testified that Greiniman made certain representations as to investments of $1,000,000 and upon which the plaintiff relied, however, the record establishes that as of August 28, 1963 the defendant Treisser had purchased the entire project with a minor exception for the sum of $80,000 of which he paid down only $33,000, with about $30,000 of that being checks which had originally been issued by plaintiff to Greiniman for land purchases. Greiniman equivocally admitted having mentioned $1,000,000, but denied stating that investments had been made as testified by plaintiff. Furthermore, the plaintiff testified he understood that he was buying land, but Greiniman denied so stating. The documentary evidence establishes that while Greiniman and Treisser were listed as owners of the business and shared in the proceeds of a subsequent sale of an

interest to one DeParis, the plaintiff was not listed as an owner and did not share in the sale to DeParis.

Upon the foregoing the plaintiff established proof of a material misrepresentation of fact which induced him to part with his presumed land assets and more cash with such documentary evidence as was available showing only that Greiniman owned an interest. The explanation of Greiniman and Treisser as to the disposition of plaintiff's checks and cash at most created issues of credibility which were not clearly passed upon by the trial court. The testimony of Greiniman and Treisser as to the handling of plaintiff's funds by them must be weighed with the total lack of disinterested witnesses or documentary evidence to support such testimony. However, the trial court did not make any express findings on credibility and it appears the complaint was dismissed for a failure of a prima facie case.

We find ample evidence of a prima facie case against the defendant Greiniman. There is also evidence which includes defendant Treisser in the handling of the plaintiff's investment. Because the trial court in its decision did not fully analyze the evidence and because issues of credibility are presented, which were not considered or decided, this does not appear to be an appropriate case for this court to make findings upon the record and render decision. The original Justice who heard and determined this case is no longer sitting and, therefore, a new trial will be necessary.

In concluding that a new trial is required, we do not necessarily decide the merits.

The judgment should be reversed, on the law and the facts, with costs, and a new trial ordered.

STALEY, JR., COOKE, SWEENEY and KANE, JJ., concur.

Judgment reversed, on the law and the facts, with costs, and a new trial ordered.